TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 91-714 |
| of | : | |
| | : | February 4, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE DE WITT CLINTON, COUNTY COUNSEL, LOS ANGELES COUNTY, has requested an opinion on the following question:

May two or more local public entities, by a joint powers agreement, provide the initial capitalization for a California domiciled mutual insurer which will provide liability insurance to the participating entities and other qualified local public entities?

CONCLUSION

Two or more local public entities, by a joint powers agreement, may provide the initial capitalization for a California domiciled mutual insurer which will provide liability insurance to the participating entities and other qualified local public entities.

ANALYSIS

It is proposed that a California domiciled mutual insurer will be established by natural persons filing the requisite articles of incorporation. (See Corp. Code, § 200; Ins. Code, § 4010 et seq.).[1] The initial capitalization for the mutual insurer will be provided by two or more local public

_____

[1]"A `mutual' insurer is an insurance corporation without capital stock owned by its policyholders collectively . . . ." (Ins. Code, § 4010.) "Any person, government or governmental agency, state or political subdivision thereof, public or private corporation, board, association, estate, trustee or fiduciary may be a policyholder member of a mutual insurer." (Ins. Code, § 4014.)

entities under the terms of a joint powers agreement. (See Gov. Code, § 6500 et seq.).[2] The entities will receive in return for such capitalization a contribution certificate or surplus note. The mutual insurer will provide liability insurance to the signatories to the agreement and other qualified local public entities. The mutual insurer will be designated in the joint powers agreement as the entity administering the agreement. (§ 6506.)

The question presented for resolution is whether local governmental entities have the authority to enter into the proposed arrangement. We conclude that such arrangement would be authorized under the Joint Exercise of Powers Act (§§ 6500-6599; "JPA") read in conjunction with specified other statutory schemes.

The JPA authorizes two or more federal, state, or local agencies (§ 6500), when authorized by their governing authority, to enter into agreements, to "jointly exercise any power common to the contracting parties" (§ 6502). "The agency or entity provided . . . to administer or execute the agreement may be one or more of the parties to the agreement or a commission or board constituted pursuant to the agreement or a person, firm or corporation, including a nonprofit corporation, designated in the agreement . . . ." (§ 6506.) For proposes of the JPA "the [administering] agency is a public entity separate from the parties to the agreement" (§ 6507) and "shall possess the common power specified in the agreement and may exercise it in the manner or according to the method provided in the agreement" (§ 6508). However, the common power "is subject to the restrictions upon the manner of exercising the power of one or more of the contracting parties, which party shall be designated by the agreement." (§ 6509.)

As a general proposition, the JPA does not grant any new powers. In *The City of Oakland* v. *Williams* (1940) 15 Cal.2d 542, 549, the Supreme Court observed: "A statute thus authorizing the joint exercise of powers separately possessed by municipalities cannot be said to enlarge upon the charter provisions of said municipality. It grants no new powers but merely sets up a new procedure for the exercise of existing powers." (See also 71 Ops.Cal.Atty.Gen. 266, 267 (1988).)

An exception to this rule appears in the Mark-Roos Local Bond Pooling Act of 1985 (§§ 6584-6599; "Mark-Roos"), a recent addition to the JPA. As stated in section 6587, "[t]his article shall be deemed to provide a complete and supplemental method for exercising the powers authorized by this article, and shall be deemed as being supplemental to the powers conferred by other applicable laws."

The express purpose of Mark-Roos is "to assist local agencies in financing public capital improvements, working capital, liability and other insurance needs, or projects whenever there are significant public benefits [as specified therein] for taking that action." (§§ 6586.) Section 6588 sets forth various "additional powers" of public entities besides those set forth in the remainder of the JPA, including the authority to:

> "(c)     Issue bonds, including, at the option of the authority, bonds bearing interest, to pay the cost of any public capital improvement, working capital, or liability or other insurance program.
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]All further section references are to the Government Code unless otherwise indicated.

"(i)     Receive and accept from any source, loans, contributions, or grants, in either money, property, labor, or other things of value, for, or in aid of, the construction financing, or refinancing of public capital improvement, or any portion thereof or for the financing of working capital or insurance programs, or for the payment of the principal of and interest on bonds if the proceeds of those bonds are used for one or more of the purposes specified in this section.

"(j)     Make secured or unsecured loans to any local agency in connection with the financing of capital improvement projects, working capital or insurance programs in accordance with an agreement between the authority and the local agency.   However, no loan shall exceed the total cost of the public capital improvements, working capital or insurance needs of the local agency as determined by the local agency and by the authority.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(r)     Enter into any agreement or contract, execute any instrument, and perform any act or thing necessary, convenient, or desirable to carry out any power authorized by this article."

Section 6591 specifically provides:

"(a)     The [joint powers] authority is authorized from time to time to issue bonds to provide funds to achieve its purposes.

"(b)     Bonds may be authorized to finance a single public capital improvement, working capital, or insurance program for a single local agency, a series of public capital improvements, working capital, or insurance program for a single local agency, a single public capital improvement, working capital, or insurance program for two or more local agencies, or a series of public capital improvements, working capital, or insurance program for two or more local agencies .  .  .  ."

Thus, in addition to the JPA providing for a procedure for governmental agencies to exercise a common power, Mark-Roos expressly provides that joint exercise of powers agencies may jointly issue bonds to finance liability and insurance needs.  We also note that the JPA is cumulative to other express powers possessed by the contracting agencies. (*In re City and County of San Francisco* (1923) 191 Cal. 172, 180-181.)[3]

---

[3]Accordingly, "pooling agreements" authorized by section 990.8 do not constitute a limitation upon other joint powers arrangements.  Also, the express exception for pooling agreements added in 1978 to Article XVI, section 6 of the California Constitution (prohibiting gifts of public funds or lending of public credit)  would not preclude other agreements.  This constitutional provision appears to have been added to clarify the law, not to provide an exclusive means for local entities to jointly acquire liability insurance. (See Voters Pamp., Prim. Elec. (June 6, 1978) p. 34.) Indeed, in 1975 we concluded that pooling agreements would be authorized under the JPA even without specific legislation to that effect.  (56 Ops.Cal.Atty.Gen. 411 (1973).)

Moving from the JPA to other general laws, the Tort Claims Act (§§ 810-997.6) authorizes a local public agency to insure itself and its employees against tort and inverse condemnation liability (§ 990). Section 990.4 states:

"The insurance authorized by this part may be provided by:

"(a)    Self-insurance, which may be, but is not required to be, funded by appropriations to establish or maintain reserves for self-insurance purposes.

"(b)    Insurance in any insurer authorized to transact such insurance in this state.

"(c)    Insurance secured in accordance with Chapter 6 (commencing with Section 1760) of Part 2 of Division 1 of the Insurance Code.

"(d)    Participation by a hospital district and its medical staff in a reciprocal or interinsurance exchange as provided in Section 1284 of the Insurance Code.

"(e)    Any combination of insurance authorized by subdivisions (a), (b), (c), and (d)."

Section 990.8 keys into the JPA as follows:

"(a)    Two or more local public entities, by a joint powers agreement made pursuant to Article 1 (commencing with Section 6500) of Chapter 5 of Division 7 may provide insurance authorized by this part or for any other purpose by any one or more of the methods specified in Section 990.4. Where two or more hospital districts have joined together to pool their self-insurance claims or losses, any nonprofit corporation created pursuant to subdivision (p) of Section 32121 of the Health and Safety Code, and affiliated with a hospital district which is a party to the pool may participate in the pool.

"(b)    Two or more local public entities having the same governing board may be coinsured under a master policy and the total premium may be prorated among those entities.

"(c)    The pooling of self-insured claims or losses among entities as authorized in subdivision (a) of Section 990.4 shall not be considered insurance nor be subject to regulation under the Insurance Code."

Accordingly, under the Tort Claims Act a local entity has the power (1) to insure itself against liability (§ 990); (2) to acquire such insurance from any insurer in this state, which would include a mutual insurer (§ 990.4); and (3) to join with other local entities pursuant to the JPA to provide such insurance by any means specified in section 990.4, which would include acquisition from a mutual insurer (§ 990.8).

Juxtaposing the foregoing express powers of local agencies under the Tort Claims Act with the extremely broad authorizations contained in Mark-Roos, we believe that two or more local agencies are authorized to enter into a joint exercise of powers agreement to procure insurance from a mutual insurer to be established by a private individuals (§§ 990, 990.4, 990.8) and to accomplish this by providing the initial capitalization for such mutual insurer. (§§ 6588, 6591.) Although the mutual insurer would be formed by private individuals, it would be owned by the local

agencies as the policyholders. (Ins. Code, § 4010.) Additionally, under the JPA the mutual insurer, a corporation, may be designated in the agreement as the entity to administer it. (§ 6506.)

Insofar as the proposed mutual insurer would provide insurance to local entities other than those participants in the joint powers agreement, its charter would be the controlling authority, not the joint powers agreement. In short, such insurance to other public agencies would be an incidental effect of the total arrangement.

In answer to the question presented, therefore, we conclude that two or more local public entities may, by a joint powers agreement, provide the initial capitalization for a California domiciled mutual insurer which will provide liability insurance to the participating entities and other qualified local entities.

\* \* \* \* \*